the first case on the call is docket number agenda number 108 947 people the state of Illinois versus Williams Good morning, your honors. May it please the court. My name is Rimas Sarnias. I'm an assistant state's attorney from Cook County representing the people of the state of Illinois in this case presents a question. If a civilian employee who works as a radio dispatcher for a police department calls a drug dealer to inform him that there are police officers near his house, is that person guilty of official misconduct? That is the charge for which Carmecita Williams, the defendant, was tried and convicted. She was also tried together with other co-defendants with criminal drug conspiracy. The evidence showed that she was employed by the Glenwood Police Department as a civilian employee, as a dispatcher. When she was hired, she was informed of the rules of the Glenwood Police Department which prohibit disclosure of confidential information. On one particular day, July 12th of 1998, she placed three telephone calls to a co-defendant, Greg Stroud. The first two calls she placed from the police phone in the police station where she was you have eyes at the college. Well, she was a dispatcher for the Glenwood Police Department. Co-defendant Greg Stroud lived in South Holland. South Suburban College is about two blocks from his house. In the third call that she made, she made right Greg Stroud. There was a barricade situation in South Holland. Glenwood police officers were dispatched to help the South Holland police officers deal with this barricade situation. They were part of a suburban emergency response team, a CERT team. She explained to him that it was her duty to notify other police officers in the area that a CERT team was coming through. And that's when she learned that there was, in fact, another police agency located at South Suburban College just a few blocks from co-defendant Greg Stroud's house. And she told co-defendant Greg Stroud on the phone, I think it was FBI, DEA, or ATF. I don't know which for sure, but it had to be one of those three. Now, the interesting thing about this was that these three calls came to light because the Cook County State's Attorney's Office Narcotics Strike Force was investigating Greg Stroud and was conducting a long-term narcotics investigation on Greg Stroud and had a wiretap on Greg Stroud's phone. It was through that wiretap that these three calls were discovered. And, in fact, through that wiretap, they were able to catch Greg Stroud in his car transporting two kilograms of cocaine. Now, in the bench trial where Greg Stroud, Carmecita Williams, and two other defendants were tried, the judge found Greg Stroud guilty of the drug conspiracy and the two kilos of cocaine and other narcotics charges. He found the defendant not guilty of criminal drug conspiracy, but found her guilty of official narcotics charges. And the official misconduct was based on Section B of the statute, which provides that a public employee commits misconduct when in his official capacity he knowingly performs an act which he knows is forbidden by law to perform. Now, the appellate court reversed Carmecita Williams' conviction for official misconduct, finding that what she did wasn't forbidden by law. I'm here to ask this court to reverse the appellate court and to reinstate her conviction. She committed acts which she knew were forbidden by law. We proved that she violated the rules of the law, and we proved that she violated the rules of the law for her convenience. Do you agree that we should go back to our context of crimes of offense, and punish people for perjury, manslaughter, and other crimes that somebody committed? When I first saw the case of Walden Silverman, I was lucky to follow the case of a crime of offense which was preordained by court of law, and I was lucky to follow the case of Felhauer. And I was lucky to follow the case of Felhauer. Yes, that's correct, Your Honor. And in fact, that was one of the rulings of the appellate court, the initial ruling before it even discussed Felhauer was to say, well, she didn't violate a law. She violated a municipal ordinance. So what she did wasn't forbidden by law, because laws are law, and therefore she's not guilty. And I submit that that is the first thing that's wrong with the appellate court's opinion, because that already ignores this court's statements in Felhauer that law for purposes of the official misconduct statute encompasses not only penal statutes, which have criminal penalties attached to them. Indeed, this interpretation by the appellate court goes against the purpose of the official misconduct statute, which is to reach public employees who exploit their official position to the detriment of the public good. Counsel, would any violation of the rules and regulations of the city be sufficient, under your argument, for a finding that it's forbidden by law, and therefore the person's guilty of official misconduct? If it fits into the statute that those rules and regulations were done in an official capacity, the violation of those rules were done by a public employee in the official capacity, knowing that, in fact, the person's guilty. But they were forbidden. What if the rules and regulations required that an officer submit a report within 48 hours, and they didn't do that? Are they guilty of official misconduct? Well, that is an example I know that the defense has used, and all I can say is that that certainly is not this case. Whether in a hypothetical case a police officer who violates a rule about police report writing and tardiness should be guilty of official misconduct, I think is debatable. But under these circumstances, where there were very definite rules to officers, to members of a police department, that they are to keep confidential police matters, and here is a dispatcher who violates the rules and regulations of the city. I don't think it's fair to say that there are officers who violate those rules by actually tipping off a drug dealer, that there are police officers near her house. Are you arguing, I'm trying to understand exactly what rule you want us to promulgate, or how you want us to define this provision of the official misconduct? I'm saying that the particular rules of the Glenwood Police Department that this defendant violated qualify as an administrative rule or regulation under this court's explanation in Fellhauer of what is a law for purposes of the official misconduct. And I know the appellate court disagreed, because the appellate court read into your Honor's decision in Fellhauer and into the statute a provision that administrative rule or regulation must mean an administrative rule or regulation of a state agency. It doesn't make any difference that this particular rule, we were asked to take judicial action on it. But I would like to understand what you're talking about, I'm not trying to take any official notice of, and it's about a board meeting in the 1980s? I, well, I'd first like to emphasize that I'm sure your Honors are aware of the situation that arose which caused the judicial notice issue to arise. But first and foremost, we had testimony from Mr. Alex DeMare, who was a former member of the Glenwood Police Department, who was a 25-year veteran of the Glenwood Police Department, who retired as Deputy Chief of the Police Department in 2000, and he was the defendant's immediate supervisor. He testified that these, that she violated these confidentiality rules, that she was informed of them when she was hired, that she violated them, and that the rules were adopted in 1985. That was his testimony. So we proved that these were not simply rules of an employment manual, as counsel for the defense wishes to characterize them. Does it matter that the indictment does not specifically allege which law the defendant broke in violation of the official misconduct statute? Well, that's a separate issue, Your Honor. The indictment was not challenged below, and the indictment specified exactly what she did. And in fact... But it didn't say which rules she violated. It did not specify which rules she violated, but Mr. DeMare, when he testified, testified to specifically which rules she violated. Those rules he read into the record, four of them, and those were introduced into evidence as exhibits, and I've attached them to my brief in the appendix. So there was no doubt whatsoever to the defendant as to what exactly she was charged with doing. In fact, her defense was completely different. Her defense was not that, oh, I'm not a member of the police department or those rules don't apply to me. Her defense was, these rules apply to me, but I didn't violate them. I didn't disclose anything confidential. Counsel, do the vagaries of this law have the potential to punish wholly innocent conduct? I know it's your position in this case that it isn't wholly innocent conduct, but would you agree that there is that potential? No, I would not, Your Honor, and here's the reason why. The cases that the defense cites on potentially innocent conduct are cases which deal, which this Court has invalidated statutes, where the Court found that the statute lacked a culpable mental state. It may have had a mental state, but it lacked a culpable mental state, and that is why the Court went further and said that, therefore, since there is a lack of a culpable mental state, there is a lack of a culpable mental state. These statutes must, could potentially punish innocent conduct and so must be declared invalid. That's not the case with the official misconduct statute. The official misconduct statute says you have to, the public, a public employee in his or her official capacity knowingly performs an act which he or she knows is forbidden by law. So the second element of knowledge is, in fact, a culpable mental state. In fact, it's quite interesting, the old adage, ignorance of the law is not an excuse, doesn't apply to Section B of official misconduct. Ignorance of the law is an excuse for someone charged with official misconduct. We have to prove that the person knew that what he or she was doing was forbidden by law. So that, I submit, is the culpable mental state, and that protects this statute from being potentially innocent conduct. Would a state-employed appellate attorney who knowingly submitted a brief over the allowable limit, would that person, he knowingly, he or she knowingly submitted a brief contrary to the agency rules, would that person be subject to a Class III felony prosecution? Well, I would hope not, but I would submit that that is not the type of case that is in any way analogous to this. Well, the facts are certainly different, but how would the argument be different? There's culpability there, he knows what the page limitation is, there's certainly rules that he or she is aware of, submits it, and then he or she submits it to the state agency. I mean, is it official misconduct? Or are we left with the discretion of the prosecutor to say, I'm not going to punish that, even though it technically, or I'm not going to charge that, even though it technically falls under the official misconduct statute? Well, I think the essence of it is to look at the statute as a statute which is geared towards public employees and employees who exploit their official position to the detriment of the public good. And I recall the defense attorney likes to cite People v. Gray as an example of somewhat analogous to the example, well, maybe not analogous, but in the same vein as the example, Your Honor, Justice Thomas has just cited, where a janitor in a veteran's home run by the state engages in financial dealings with a person who lives in the veteran's home and is charged with official misconduct for violating a rule that employees are not supposed to have financial dealings with the people who live at the home. And the court said, wait a minute, we're talking about official capacity, we're talking about a janitor, what is it that he's charged about his janitorial duties that has, that he has exploited to the detriment of the public good? And I think that's a clear distinction between that case and the case, and the example Your Honor has given, and this particular case, where we have a radio dispatcher who in fact is a person in a position to be charged with official misconduct. He's in a position of public trust and exploits that public trust to the detriment of the public good by notifying a drug dealer that there are police officers near her home. I think this case is a clear case of official misconduct. I think the court, the appellate court is absolutely mistaken when it says, well, she's not even a member of the public police department, that flies in the face of the testimony of Alex Damari, a 25-year veteran of the police department and deputy chief. If anyone should know who's the member of a police department, it would be him. And the decision actually, as far as state agencies, actually makes no sense, because the appellate court's decision would mean that if the defendant were an employee of the Illinois State Police, a state agency, she could be charged with official misconduct, but because she happens to be an employee of the Glenwood Police Department and municipality, she can't. Are you saying then the test would be as you look to the employee and what the duties are, for instance, this particular employee, confidentiality would be the duty that she violated, and whether or not the duty of that employee was violated? For instance, I mean, confidentiality and knowing where all the raids are going to be and what's happening might be violated. It's in the essence of her employment. I mean, that's why her employment is so a matter of public trust, and that's why this is such an egregious violation of that public trust. Thank you. Good morning, Your Honors. Mr. Cernas, may it please the Court. My name is Brian McNeil, and I represent Karma Cedar Williams in this case. This Court should affirm the reversal of Ms. Williams' conviction, first because adopting the State's construction of the statute would enable prosecutions for innocent conduct. In addition, the Glenwood Police Department rules and regulations, even if they apply as laws under the statute, do not apply to Ms. Williams under the express terms of the Glenwood Code. And finally, just briefly, if the rules and regulations qualify as laws under the statute and apply despite the text of the statute, the statute is unconstitutional. But isn't that kind of an absurd situation where the defendant has duties, particularly confidentiality, and if every time she received a phone call, she'd call somebody and warn them? I agree that we can't have that happening, and we're not claiming that this is exemplary conduct at issue in this case, Your Honors. But to the extent that the State is suggesting that the only possible way it could get after this kind of conduct under the criminal law is through a particular statute, that's just not true. There are other criminal statutes that they could have pursued here, such as obstructing a peace officer or concealing or aiding a fugitive. And if it had charged her under those cases, those might properly reach this conduct. The problem, though, is that this statute should not apply here, because if it does, then it runs the risk of enabling prosecutions for all sorts of crimes. First, in this case, obviously, violation of each and every GPD rule and regulation could be a Class III felony. And also felonious would be violations of other rules across the State, such as the Supreme Court rules, as you mentioned earlier, and failure to fill out reports, as Justice Garmon mentioned a minute ago. But don't you just have to look at the duties and what the essence of the job is? I mean, a page limitation doesn't go to informing someone before they committed a crime. Well, the conduct is certainly different, but the way the statute would operate to reach that conduct is definitely the same. Now, the State's response to all this is to say that the statute wouldn't really apply to these circumstances because they're not actually exploiting the public in any way in these situations. However, that's a completely illusory limitation on the statute. It's not in the statutory text, and actual exploitation is certainly not an element of the offense. And therefore, if this conduct reaches Ms. Williams in this case, and Your Honors reinstate her conviction, then it must necessarily reach violations of Supreme Court rules, of report writing requirements, of the CPS computer policy that we mentioned in the briefs that would allow a felony prosecution for an employee who solicits a e-mail asking for church raffle ticket purchases for her daughter's fundraising function, for example. There would be no way to reasonably stop the prosecutions of this nature if the State's position prevails. This Court has never upheld an official misconduct conviction for the violation of a rule of employment, and Your Honors should not start in this case. The People v. Gray case is very persuasive here because in that case, the Fourth District Appellate Court was presented with a situation where the statute was based on rules of employment, and the Court concluded that such violations, with respect to such violations, we cannot believe that deeming such behavior felonious is what the legislature had in mind when it enacted the official misconduct statute. Counsel, if we find that the police department rules and regulations are not laws within the meaning of the official misconduct statute, will we then have to overrule Becker and Dixon? I don't think so, Your Honor, because those particular cases never really addressed that question. Everyone in those cases proceeded from the assumption that the police department general order was a proper basis for an official misconduct prosecution. But the Court was thus never called upon to pass on that issue. And so we don't know the circumstances behind the, you know, inaction of those regulations or anything like that. So this case is a very different situation. The State claims that the Gray case is really more of an issue of official capacity, but the Gray Court was very concerned about extending the statute too far, and it indicated that rules and regulations of employment are not a proper basis of a prosecution. The State also argues that these rules are more than just employment rules and regulations because they were actually adopted into law by the Glenwood Board of Trustees. However, first, this argument depends on matter from outside the evidence and should not even be considered in the first place. In addition, even the evidence from outside the record does not indicate that these specific rules were what was actually adopted by the Board of Trustees back in 1985. They adopted something called the Glenwood Police Department Rules and Regulations Policy and Procedures Package and did not indicate that these confidentiality rules were necessarily part of that. The State relies on Mr. DiMari's testimony below, but he never indicated that they remained in effect completely unaltered until 13 years later when Ms. Williams is alleged to have violated them. And it must also be borne in mind that whether these qualify as laws or not, reinstating Ms. Williams' conviction would enable prosecutions for innocent conduct. This Court should thus construe the statute not to apply to violations of the rules of employment, first in order to prevent prosecutions to rules and regulations that have no application outside of an employee's workplace. It would also place reasonable restrictions on the statute by preventing it from applying to situations where innocent conduct is involved. The Peabody Griever case is a great example of an appropriate approach to take here, Your Honors. In that case, this Court simply rejected the State's attempt to apply the statute to the breach of a fiduciary duty. Your Honors should act similarly here and reject the State's attempt to stretch the statute to apply to a rule and regulation of employment. Your Honors should accordingly affirm the reversal of Ms. Williams' conviction. However, even if Your Honors disagree with that construction and adopt the State's construction of the statute, Ms. Williams was not an actual member of the Glenwood Police Department under the express terms of the Glenwood Code, and thus these rules do not apply to her. The State exalts the Glenwood Code as turning these rules and regulations into actual laws for the purposes of the statute. But the same Glenwood Code indicates quite specifically that these rules apply only to members of the Department  as the appellate court found she's not among the members of the Department because she's a civilian employee and not a sworn police officer. Now the State argues that she was a member because she fits into the category of such other and further employees as the Glenwood Board of Trustees and President can provide for from time to time. However, the State's basis for this, again, is Mr. DeMaria's testimony, and he never indicated anything regarding the actions of the Glenwood Board or the Glenwood President. He only indicated that Ms. Williams was hired at some point and that she worked as a dispatcher. If the Glenwood Code operates to make these rules and regulations into actual laws, it surely excludes their application to Ms. Williams, and therefore it should be honored on both fronts if Your Honors are going to use it to make these into laws in the first place. Counsel, is it in the record who was her supervisor? Yes, Mr. DeMaria said that he was her immediate supervisor at the police department. And there's no dispute that he's in the police department? That's correct. Thank you. And the State also relies on Ms. Williams' own testimony in this case because she said that she did not actually violate these rules as indicating that they actually applied to her. However, her denial of violating the rules is in no way inconsistent with the fact that the Glenwood Code, something outside the record, explicitly excludes her from the membership in the department. But didn't she admit that the rules applied to her? Her testimony indicated her belief that they must have applied to her. However, even her subjective belief that the rules might have applied to her does not change the text of the Glenwood Code, which explicitly, I'm sorry, go ahead. She also has a subjective belief that she didn't violate them. I'm sorry? I didn't hear you. She had a subjective belief that she didn't violate them. That's also true, Your Honor. But, you know, obviously that suggests her belief that maybe they applied to her. However, even if she believed that they applied to her, perhaps because Mr. Damari told her that they did, that would not change the text of the Glenwood Code, which excludes her from membership in the department. You said the code was outside of this record? That's correct, Your Honor. I mean only that, obviously, the State attached it to its brief in the supplemental brief in the appellate court. I meant simply that Ms. Williams would not necessarily know the contents of the Glenwood Code in this situation. And so maybe she could subjectively believe that these rules applied to her because Mr. Damari told her that. And finally, if Your Honor's disagree and find that the statute applies to these rules and regulations and that it applies to Ms. Williams despite the text of the Glenwood Code, the statute is unconstitutional. First, that's because the statute potentially punishes innocent conduct if it applies to Ms. Williams' conduct in this particular case. Now, the State focuses exclusively on conduct in this case, but the conduct in this particular case actually is not important for the purposes of the due process analysis. The important thing under Wick, Wright, Zaremba, and other cases of this court is the potential to punish innocent conduct. And it cannot be denied that if her conviction for a violation of a rule and regulation of the Glenwood Police Department stands, that it could certainly stand in the other cases we've talked about, the Chicago Public Schools computer policy violation, the Supreme Court rule violation, all manner of conduct that is not truly criminal. Now, the State claims that her conduct is automatically wrongful and that the difference is that those cases involved a situation where there was no culpable intent. That might be a persuasive argument if the statute applied only to rules and regulations that involved a culpable intent, but that's not the case here. It would apply to the computer policy I mentioned and failure to submit reports on time, all sorts of potentially innocent conduct. In addition, the statute is unconstitutionally vague as applied to Ms. Williams because no reasonable person would think that violating the rules of employment, which have no application whatsoever to anyone outside of unemployment, could possibly result or would qualify as a law at all, let alone a criminal law or even one that could result in a felony conviction. And accordingly, if there are no further questions, we ask that you affirm the reversal of Ms. Williams' conviction. Thank you very much, Your Honors. Thank you. Your Honors, I would first like to address the issue that the defense attorney raised and that actually the appellate court raised in a footnote to its opinion. The claim that Carmencita Williams is not guilty of official misconduct because the rules prohibiting disclosure of confidential information only apply to members of the department and she is, the argument goes, not a member of the department. She's a civilian employee hired by the department to be a radio dispatcher. Well, that claim that she's not a member of the department just flies in the face of the testimony of Mr. Damari, the deputy chief of the department. If there's anyone who would know who is a member of the department, it would be a 25-year veteran of the Glenwood Police Department who's deputy chief of the department and who actually was her supervisor. The legal basis for this claim that she's not a member is based on a provision of the municipal code of the village of Glenwood which spells out who is a member of the police department but includes any other members as certified by the village board. So to establish that she's a member of a police department, we have the testimony of one witness unchallenged. That's correct. And I would like to underline that last word that you stated, Justice Freeman, unchallenged. The defendant took the witness stand in this case and she did not challenge that in any way nor were there any other witnesses presented to challenge Mr. Damari's testimony. To do away with the vagaries of the statute though, don't we have to insert into the statute what you've inserted, that it only applies when there's culpable intent and the statute doesn't mention culpable intent and so aren't we left with the strong argument that there can be innocent conduct under the vagaries of this statute that could be prosecuted? Well, Your Honor, my argument is and I submit to the court that knowingly performing an act which you know is forbidden by law is an indication of culpable intent, culpable mental state. I mean, I know, for example, in the Zaremba case you had a situation where a theft statute based on receiving stolen property was invalidated on the grounds that an evidence technician who was transporting recovered burglary proceeds could technically be guilty of theft. Well, he didn't have a culpable mental state, he didn't have the intent to deprive the owner of it, he was just bringing it to the police station to inventory it, but technically he'd come under that statute so it's invalidated. How in under these circumstances could you possibly say that a radio dispatcher who knows that she is not to disclose confidential information? Well, then we're left with what we discussed before, that if law is going to be extended to rules and agency determinations, that under that we're left with, and we've cited some examples, I won't go back, that if you knowingly violate that rule, I mean, that's all that's required under your analysis of the statute, and you're left then to the discretion of the prosecutor. Well, Justice Thomas, those kind of cases, let me just say this in response to your question. This court in Fellhauer did specifically state that administrative rules and regulations are included in the meaning of law for purposes of the official misconduct statute, and this court in People v. Griever cited with approval the appellate court decision in People v. Semel, which specified that administrative rules or regulations can be the basis for a charge of official misconduct, even if those rules and regulations do not in and of themselves contain a penalty clause or criminal sanctions. And there's a whole line of cases that have followed this court's decision in Fellhauer and have adopted the Semel reasoning, and the cases that Justice Burke mentioned, Dixon and Becker, are perfect examples of regulations of the Chicago Police Department, which in Becker it was the officer failed to immediately report to his sergeant that he discharged a weapon during an altercation where the victim was killed. It's a Chicago Police Department rule or regulation, and it was used as the basis of an official misconduct charge. There are other cases, such as Brogan and Dixon, where regulations of the Chicago Police Department, regulations of the Cook County Sheriff's Police and Cook County Department of Corrections were violated, and those served as basis for an official misconduct charge. To adopt the defense attorney's argument then would be to eradicate that whole line of cases which followed this court's decision in Fellhauer and its adoption of the Semel reasoning in Griever. I'll ask you just another question on that unchallenged witness. If he's unchallenged, do we have an obligation to accept his testimony, his opinion testimony? Is that correct? Well, I would say it's more than opinion testimony. He's the... I imagine he was qualified as an expert and so forth, but still becomes opinion testimony. The testimony that he gave was that these rules applied to her. So what is... and that she was hired in 1997, he was her supervisor, and he testified that these rules were adopted in 1985 and were still in effect in 2000 when he retired. So they were ipso facto in effect in 1998 when she placed these three calls. And that was the testimony, and that was unchallenged, as Your Honor says. Implicit in that testimony is that she's a member of the police department. What's the standard of review here? On that factual... I would submit that that is a factual issue, and that the standard of review is that, in fact, on that issue, the question is, can any rational trial or fact find the defendant guilty based on those facts? And that, the appellate court, however, treated it as a legal issue and claimed, well, we're going to just look at the definition of who is a member of the police department and then decide that she doesn't fit that definition. My response is that the testimony of Mr. Murphy is unchallenged, implicitly establishes that she is a member of the police department. Your Honors, I would just simply like to echo at the end what I consider a very down-to-earth and reasonable statement by Justice Murphy in his dissent, and he looked at the facts of this case and said simply, if this is an official misconduct, I don't know what is. I would ask, Your Honors, to reinstate her conviction. Thank you. Case number 108-974, Mr. Marshall, will be taken under advisement. It's agenda number 15. Thank you.